JULY TERM, 1882, No. 84.                    MARCH 8TH, 1882.

## Henninger *versus* Woodring.

1. Upon a *certiorari* to the judgment of an alderman, the transcript showed a cause of action within the jurisdiction, process regularly issued and served, the appearance of the parties, the examination of witnesses, the entry of judgment on the same. day, that no appeal was taken, and that the *certiorari* was issued eight months afterward. It also contained the following unsigned entry, " February 10, 1880, I acknowledge to have received full satisfaction."

It appeared from depositions that after the testimony was taken, and before the decision, counsel for defendant proposed to the counsel for plaintiff, in the presence of the plaintiff, to compromise the suit by the surrender of the note in dispute within ten days or a fortnight, which offer was accepted. Notice of the judgment was given to the defendant the day of its entry. The counsel for defendant subsequently surrendered the note to the counsel for plaintiff and paid him the costs and fees, and the latter promised to satisfy the judgment. The unsigned entry on the docket was made at his instance.

*Held,* that there was no ground upon which to base a charge of improper conduct or fraud against the alderman, and that the judgment was properly affirmed.

2. *Quære* as to whether a writ of error lay in such a case, and whether the parol testimony was properly before the court for consideration.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lehigh County.*

Certiorari, issued September 8th, 1880, to the judgment of an alderman, W. L. Jones, in an action of trover and conversion brought by H. J. Woodring against Josiah Henninger.

The transcript of the alderman was as follows:

" Trover and conversion. Capias issued January 10th, 1880. Daniel Weaver, constable.

January 12th, defendant brought up. Plaintiff also appears and claims $300 damages in trover and conversion, for the retaining by defendant of a certain promissory note, drawn to the order of Moses Heberle, by Dr. Samuel Guth, of the sum and value of $300, which said note is the property of and belongs to the plaintiff; which said promissory note the defendant has converted to his own use, and which the defendant refuseth to return to the plaintiff, although requested. Plaintiff sworn. W. P. Snyder sworn on behalf

of the plaintiff. Defendant sworn, and after hearing the full proofs of the parties on oath and their allegations, judgment publicly in favor of the plaintiff and against the defendant for three hundred dollars and costs of suit. Execution issued February 3d, 1880. D. Weaver, Constable. Returnable February 23d, 1880. Execution returned by order of plaintiff's attorney, February 6th, 1880. February 10th, 1880, I acknowledge to have received full satisfaction for the above judgment. Alias execution issued August 30th, 1880. Daniel Weaver, Constable. Returnable September 19th, 1880. Certiorari received from the Court of Common Pleas, September 8th, A.D. '80."

Depositions were taken on behalf of the defendant Henninger, under objection as to their competency and relevancy.

*Thomas B. Metzger* testified in substance: I was attorney for the defendant, and at about the hour fixed for the hearing appeared at Mr. Jones's office with the defendant, and there met William P. Snyder, Robert Hausman, and Henry J. Woodring. Mr. Snyder then testified that as attorney in fact for Moses Heberle he had transferred the note in suit to Woodring, subject to its indorsement over by Heberle to Henninger as collateral security for a claim, and that his power of attorney had been lost or mislaid, but was recorded. I then, in the presence of these parties, said, "If Snyder's power of attorney is recorded we will soon make an end of this;" to which the alderman responded, "Oh yes. I knew if you got together and talked the matter over, you could come to some understanding." I proposed to Mr. Snyder that he and I proceed to my office, and arrange the matter. I handed him two of the notes held by Henninger as collateral security. We agreed that the Guth note should be handed to him by me after the lapse of ten days or a fortnight. February 10th, 1880, I received notice of an execution. The alderman informed me that he had been requested by Robert Hausman to enter judgment at noon of the day when we had met. I saw Mr. Snyder, who said he would remedy it; that it was all wrong. I saw Mr. Hausman, and after some conversation said, "I'll give you the note as I had promised, and you go and enter satisfaction on this judgment." I think the costs amounted to six dollars and something, which I paid him, at the same time handing him the Guth note. I paid him his fees of twenty dollars, and he left me with the promise that he would pay over the costs and satisfy the judgment. I heard nothing more about it until this second execution was issued. The hearing was not completed when Mr. Snyder and I left the alderman's office. What I said, in relation

[Henninger v. Woodring.]

to the compromise of the case in the alderman's office, was
said in the hearing and presence of Woodring. He took part
in the conversation.

*William P. Snyder* testified in substance:

The suit was brought on the $300 note, the maker of which
was Samuel Guth. There had been a payment of $100 on
account before its assignment to Woodring. Mr. Metzger,
in the presence and hearing of Woodring, made an offer of
compromise. Neither Mr. Metzger nor his client on the day
of suit was willing to deliver the notes. Mr. Metzger sug-
gested to Woodring, whether if, within a reasonable time, he
should deliver the notes to Mr. Hausman, that would settle
the suit before the alderman. Woodring said, " Yes, sir."

*William L. Jones*, the alderman, testified in substance:

I gave Henninger notice of the entry of the judgment the
same day it was entered, only a few minutes after it had
been entered. When I heard the case, as near as I can rec-
ollect, I gave notice that the decision would be rendered right
after dinner. I recollect nothing that was said about set-
tling the matter. I did not say to Mr. Metzger that the
judgment had been entered at the instance of Mr. Hausman.
I think I entered, " February 10th, 1880, I acknowledge to
have received full satisfaction " at the instance of Mr. Haus-
man.

The defendant then filed exceptions: 1st. That the judg-
ment was obtained by fraud; 2d. That there should be satis-
faction entered on the judgment; and seven others, raising
questions of fact. He also filed additional exceptions:

1. The record of the alderman shows that on February 3d,
1880, execution was issued on the judgment, which on Febru-
ary 6th, 1880, was marked: " Returned by order of plaintiff's
attorney."

2. The record shows an acknowledgment of full satisfac-
tion of the above judgment on February 10th, 1880.

3. An alias execution was issued August 30th, 1880, after
an acknowledgment of satisfaction in full of the judgment,
and payment of costs by defendant.

The Court, ALBRIGHT, P. J., filed the following opinion :

" From the depositions and from what was said at the argu-
ment, it is apparent that if Mr. Henninger is required to pay
this judgment, a gross wrong will have been committed.

" To set aside the execution, if the power to do so existed,
would do the defendant no good (Mr. Henninger was defend-
ant before the alderman). If the judgment must stand, an-
other execution would be the consequence. The law pro-
vides, that no execution isued by a justice shall be set aside
for informality, if it shall appear on the face of the same that

[Henninger *v.* Woodring.]

it was issued in the name of the Commonwealth for the sum for which judgment had been entered, that a day has been mentioned for the return thereof, and that the cause of action was cognizable before a justice. (See Act of 1810, section 22d.)   Under the Act of 1879, the justice had jurisdiction. None of the irregularities mentioned exists.  The Court therefore cannot set aside the execution.  Can the judgment be reversed ?

" The 21st section of the Act of 1810 says, that no judgment of a justice shall be set aside in pursuance of a writ of certiorari, unless the same be issued within twenty days after judgment was entered.  It has been decided, that where the party complaining makes it appear that there was no jurisdiction, or that the summons was not served, and that he did not appear, the certiorari may be taken within twenty days from the time the party learns that a judgment had been entered against him.   Here there was jurisdiction, and both a service and an appearance.  If for any of the matters complained of the Court could relieve, the certiorari would be too late.  The judgment was entered January 10th, 1880; the certiorari was issued September 8th, 1880.   The alderman swears that he told the defendant, the day when judgment was entered, that he had entered it.  Defendant's counsel has testified that he learned of the first execution about the 10th of February, 1880.   On certiorari the Court has only the power to affirm the justice's judgment ; the justice's judgment cannot be corrected, nor can it be reversed for matters subsequent to the judgment: Pool *v.* Morgan, 10 W., 53.   In that case the Court below erroneously awarded an issue to try the question whether there had been a payment in whole or in part.

" That a gross outrage has been committed is only too apparent.   The Court regrets that the law has not given it the power in this proceeding to relieve the victim, Mr. Henninger.  We can only express the hope that he will be able, without serious loss, to extricate himself from the perplexing situation he is now in.

" Now, June 17th, 1881, the judgments and proceedings are affirmed."

Defendant then took out a writ of error, assigning nine errors, in substance : that the Court erred in affirming the judgment and proceedings before the alderman, in not setting aside the execution, and in not sustaining the exceptions.

*John Rupp,* for plaintiff in error.
The judgment is reviewable in error.

[Henninger v. Woodring.]

The last proviso to section 22 of the Act of March 20th, 1810, which says: " Judgment of the Court of Common Pleas shall be final on all proceedings removed as aforesaid, by the said Court, and no writ of error shall issue thereon," does not apply where the proceedings are not under that Act: Commonwealth v. Burkhart, 11 Harris, 521 ; Zimmerly v. Commissioners, 1 Casey, 134 ; Clark v. Yeat, 4 Binney, 185 ; Buckmyer v. Dubbs, 5 Binney, 29 ; Carpenter's Case, 2 H., 486.

The proviso to the 21st section of that act, which requires that a certiorari must issue within twenty days after judgment, is also confined to cases arising under that act: Cooke v. Reinhart, 1 Rawle, 321 ; Welker v. Welker, 3 P. & W., 24; Young's Petition, 9 Barr, 215 ; Caughey v. The Mayor, 12 S. & R., 53 ; Graver v. Fehr, 8 Norris, 460.

Where a judgment is obtained by fraud, it will be reversed on certiorari, though the writ was not issued within the twenty days : Lacock v. White, 7 H., 495.

Parol testimony is admissible, where fraud on the part of the justice is alleged: Dunbar v. Jones, 1 Ash, 215 ; McMullen v. Orr, 28 Leg. Int., 45 ; Commissioners v. Fickinger, 1 P. F. Smith, 48 ; Buckmyer v. Dubs, 5 Binney, 29.

Parol evidence as to what occurred before the justice is admissible: Fisher v. Nyce, 10 P. F. Smith, 107 ; Lacock v. White, 7 H., 495.

A gross outrage has been committed. The entering of the judgment was a fraud, and the judgment is void.

*A. B. Longaker*, for defendant in error.

The 4th section of the Act of 1814, which provides that every proceeding shall close under the Act of 1810, settles that the judgment in certiorari is conclusive, and no writ of error lies: Borland v. Ealy, 7 Wright, 114.

Assuming that the writ is maintainable, nothing is reviewable but the record : Lower Augusta v. Selinsgrove, 14 P. F. Smith, 166 ; Fisher v. Nyce, 10 P. F. Smith, 107 ; Aurentz v. Porter, 12 Wright, 335.

Upon the facts of this case, there is no ground for reversal.

No fraud is imputed to the justice, and that which is imputed to the alleged attorney of Woodring cannot affect the judgment: Campbell v. Penn District, 6 Phila., 270 ; Brookfield v. Hill, 1 Phila., 439 ; Dailey v. Bartholomew, 1 Ash., 135 ; Heft v. Hammill, 1 Phila., 394 ; Commissioners v. Fickinger, 51 Penna. State, 48.

If Hausman had been proven to be the attorney of Woodring, his duties as to compromise ended after judgment. He

[Henninger *v.* Woodring.]

could take only cash in satisfaction: Chambers *v.* Miller, 7 Watts, 63; Bank *v.* Robb, 4 Brewster, 106.

On certiorari the Court cannot inquire whether the judgment has been paid.

The opinion of the Court was delivered October 2d, 1882, by STERRETT, J.

For reasons given by the learned president of the Common Pleas we think he was clearly right in affirming the judgment of the alderman. Conceding, for the sake of argument, that a writ of error lies in a case like the present, and that the testimony submitted to the Court below is properly before us for consideration, we find nothing in the record of the judgment and proceedings before the alderman, or in the testimony, to justify a reversal. The transcript contains everything that is essential to a regular and valid judgment. The cause of action as therein stated was clearly within the jurisdiction of the alderman; process was regularly issued and served; both parties appeared; witnesses on behalf of each were sworn and examined, and on the same day judgment was rendered in favor of the plaintiff. No appeal was taken, and nearly eight months elapsed before the writ of certiorari was issued. As a general rule the Court of Common Pleas, in reviewing the judgment of a justice or alderman, will not look beyond the record of his proceedings. To this rule, however, there are some well-recognized exceptions, but there is nothing in the present case to bring it within any of them. There is no ground on which to base a charge of improper conduct or fraud on the part of the alderman. The hearing was concluded in the forenoon, and notice having been given that the case would be decided in the afternoon, judgment was then entered in favor of the plaintiff, and on the same day notice thereof was given to defendant. These facts were clearly established by the testimony. If the defendant, relying on the promise of plaintiff's counsel that the matter in controversy would be settled, neglected to appeal within the time allowed by law, the alderman is not in any manner responsible for the consequences.

Judgment affirmed.